Blake, Admr., Appellant, *v.* Metzgar, Gdn.

[Marked to be reported.]

| 150 | 291 |
| e208 | 639 |

*Gambling life insurance—Distribution—Devolution—Recovery.*

The right to recover on the part of the legal representatives of the assured from a person who has received the proceeds of a speculative or gambling policy of life insurance ends with the first devolution.

After an executor or administrator of a speculative assignee has received money under such circumstances and in good faith distributed it, there can be no recovery against the distributee.

*Reserved point—Exception to form—Practice.*

It seems that the Supreme Court will not consider the form in which a question of law was reserved in the court below unless proper exception was taken to the reservation at the time the reservation was made.

Argued May 19, 1892. Appeal, No. 51, July T., 1892, by plaintiff, from judgment of C. P. York Co., April T., 1891, No. 25, for defendant *non obstante veredicto,* on reserved point, on verdict for plaintiff, in assumpsit, to recover proceeds of gambling policy of life insurance. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and HEYDRICK, JJ.

This action was brought by Blake, administrator of Sarah Mathias, deceased, against Metzgar, guardian of Hallick E. Myers, to recover one fourth part of the net proceeds of a certificate of insurance on the life of plaintiffs' intestate, alleged to have been procured and assigned for speculative purposes.

The evidence was to the following effect, on the trial before LATIMER, P. J.: At the request of J. B. Rentzel, an agent of the U. B. Mutual Aid Society, Theodore Mathias, a son of Sarah Mathias, procured from her an application for $3,000 of insurance upon her own life. The policy, and the application also, it seems, recited as the beneficiary, Kate Seifert, "her daughter." Evidence was given on the trial to the effect that Kate Seifert was her step-daughter, a married woman, living with and supported by her own husband, apart from the assured, and that she was not a creditor. The policy was placed in the hands of the agent who sold it for $75 to H. B. Myers, who had no insurable interest in the life of the assured—Kate Seifert executing an assignment. H. B. Myers died June 4,

1877. It is stated by appellee that the policy of insurance, when offered in evidence, showed an assignment by Myers's administrator to Sallie Myers, dated Nov. 12, 1877, duly executed and approved, but it does not appear on the policy as printed in appellant's paper book. Sarah Mathias died March 11, 1878, and the insurance company on July 9, 1878, paid George C. Myers, administrator of H. B. Myers, $2,910.60, the net proceeds of the policy. The administrator divided this sum equally among the guardians of the four minor children of H. B. Myers; defendant, as guardian of Hallick E. Myers, one of the minors, receiving $723. The administrator did not account for this money in the settlement of his decedent's estate. He was finally discharged by the orphans' court Oct. 28, 1878. The defendant, as guardian, filed his triennial account May 14, 1891, charging himself, among other things, as follows: "July 26, 1878. Received of the U. B. Mutual Aid Society, $723." Also with interest on same. At the time of the trial the ward was not of age, and these moneys were still in the guardian's hands. Letters were granted to plaintiff on Sarah Mathias's estate March 16, 1888. This suit was brought Feb. 5, 1891.

The court left to the jury the question whether or not Kate Seifert or H. B. Myers had an insurable interest, and continued:

"But I propose to reserve the question, [whether or not, on the uncontradicted evidence in the case, which shows that the money secured by this policy was paid to George C. Myers, as administrator of H. B. Myers, and by him, as such administrator, $723 of it was paid to the defendant and received by him as guardian of Hallick E. Myers, a son and heir of H. B. Myers, at a time when there was no personal representative of Sarah Mathias claiming, or legally entitled to claim, the same; and, in the absence of any evidence to show any knowledge by defendant of the speculative character of the assignment to H. B. Myers, or to connect the defendant in any way therewith, the plaintiff can recover from this defendant, as guardian aforesaid, the money so received by him."] [7, 8]

Plaintiff's points were as follows, *inter alia :*

"1. If the jury believe from the evidence of plaintiff, which is uncontradicted, that the policy of insurance in evidence was procured for speculative purposes, and that Kate Seifert, the

beneficiary named therein, was not a daughter of Sarah Mathias and had no insurable interest in her life when the insurance was effected, and if they further believe that Henry S. Myers, her assignee, had no insurable interest in the life of Sarah Mathias, when he purchased the policies in question, then the defendant Zachariah Metzgar, who, as guardian of Hallick E. Myers, received a portion of the moneys, realized on said policy by George C. Myers, administrator of Henry B. Myers deceased, had no legal right as against the administrator of Sarah Mathias deceased, to receive or to retain said moneys, and the plaintiff is entitled, on the uncontradicted evidence offered by the plaintiff in this case if believed, to recover of and from said defendant the sum so had and received by him; to wit, seven hundred and twenty-three dollars, ($723) with legal interest thereon from the date of its receipt. *Answer:* The first point as written is refused. [1]

" 4. If the jury believe from the evidence offered by plaintiff that Kate Seifert, the beneficiary named in said policy of insurance was not, at the time of taking out the same, the daughter of Sarah Mathias, and was not living with her, or supported by her, but was living with and supported by her own husband John Seifert at a distance from the residence of Sarah Mathias, her step-mother, who was then separated from her husband (the father of said Kate Seifert), then the said Kate Seifert had no insurable interest in the life of said Sarah Mathias as a relation, and had no right to recover the proceeds of said policy as such, and could not, by her assignment thereof as such, entitle Henry B. Myers, or his administrator, George C. Myers, to secure the same; and the defendant as guardian of a minor child of said Henry B. Myers deceased has no legal right to retain any moneys received by him of the proceeds of said policy, unless the jury finds that Kate Seifert was a creditor of Sarah Mathias, and the verdict of the jury should be for the plaintiff for the sum so received, if any, with interest thereon from the date of its receipt. *Answer:* If the jury find the facts to be as stated in this point and that Kate Seifert was not a creditor of Sarah Mathias, she had no insurable interest in the life of Sarah Mathias, and her assignment of the policy to H. B. Myers was void and conveyed no legal right to the moneys secured by the policy. Whether or not the defendant has a

right to retain the money received by him from George C. Myers, at the time and in the manner revealed by the un-contradicted evidence is reserved as stated in the general charge. [3, 4]

"5. If the jury believe the uncontradicted testimony offered by the plaintiff in this case, their verdict should be for the plaintiff for the sum of $723 with interest thereon, from the date of its receipt by the defendant, at the rate of six per cent per annum. *Answer :* The fifth point is refused." [5]

Plaintiff, before rendition of verdict Feb. 26, 1892, filed a general exception to the charge of the court and the answers to the points and requested the court to file the charge in writing. March 12 notes of evidence and charge of court filed. March 17, specific objections to charge of court, answers to points, and manner and form of reservation filed by leave of court, defendant objecting.

Verdict was rendered for plaintiff for $723, subject to reserved question.

The court entered judgment for the defendant, *non obstante veredicto,* on the reserved point, in the following opinion, by LATIMER, P. J.:

"The facts stated in the court's reservation are undisputed, and no exception was made to the form of the reservation. The legal question thereon arising is whether, on the part of this defendant receiving this money in the manner and in the character stated in the reservation, the law implies a contract to pay it to this plaintiff. In other words whether the law clothes the fund, thus received by the defendant, with a trust for the estate of Sarah Mathias; or impressed on it the character of money had and received for the use of that estate. I think it plain, on principle and authority, that these questions must be answered in the negative, and that no such contract is implied on the part of this defendant, either personally or in his character of guardian in which he is sued.

"The action for money had and received is an equitable remedy that lies in favor of one person against another, when that other has received money, either from the plaintiff himself or from a third person, under such circumstances that, in equity and good conscience, he ought not to retain it, and which *ex æquo et bono* belongs to plaintiff: Wait's Actions and Defences,

469.  And from the moral obligation arises the legal implica-
tion of a contract to pay to him who has the superior right.

"In this case, the money was voluntarily paid by the ad-
ministrator of H. B. Myers, deceased, to the defendant in his
capacity of guardian of a son and heir of said decedent, as part
of his ward's share in his father's estate.  The defendant had
not only the legal right to receive the money so paid, but was
charged with the legal duty to receive from the administrator
the whole of the ward's share of his father's estate; and had at
the time no knowledge of the speculative character of the in-
surance or of H. B. Myers' want of insurable interest in the
life of the insured party.  The guardian is charged with the
legal duty to account to his ward for all that he received; and,
immediately on its receipt, became liable to his ward for this
money; and the plaintiff has proved that he charged himself
with it in his triennial guardian account.

"Not only is there nothing in equity and good conscience
forbidding him to retain the money, or requiring him to pay
it to the plaintiff, but a plain and imperative duty requires him
to retain it for his ward, in whose behalf he, in good faith, re-
ceived it, and to whom is owing his first and highest obligation.

" A distributee, *sui juris*, of a decedent's estate, or the
guardian of one under age, may, in good conscience, retain, as
against the administrator, executor, other distributees or cred-
itors, money voluntarily paid in excess of his share and which
there was no legal obligation to pay, if received in good faith:
Montgomery's Ap., 92 Pa. 202; Edgar v. Shields, 1 Gr. 361;
Miller v. Hulme, 126 Pa. 277.

"Says C. J. Paxson in Montgomery's Appeal, *supra:* 'It
would be a great hardship upon distributees to whom an ad-
ministrator has voluntarily made payments on account of their
shares, if they may be called upon, after the lapse of years,
for repayment.  They may have spent it, or increased their
style of living, in entire good faith, and in ignorance of any
overpayment.'  And in Miller v. Hulme, *supra,* Mr. Justice
Clark, quoting the above language of C. J. Paxson, adds 'so
here the guardian may have expended the money or made
himself liable to his ward for it,'—exactly what the defendant
has done, as the plaintiff showed.

" It is true that the cases cited are not precisely on all fours

with this case, involving as they do only the question of the duty to repay to an administrator or executor, money voluntarily but improperly paid. But they are full to the point that there is nothing against equity and good conscience in the retention of money received in good faith, by or on behalf of an heir or other distributee, even though not legally demandable when received, and in excess of his share. The test is not the right to demand, but the good faith and absence of fraud in the receipt of the money. This principle is ample to protect this defendant against this claim and decisive against the plaintiff's right to recover in this suit; for that which the defendant in good faith received on behalf of his ward, he may in good conscience retain. Illustrations of the principle that that which was conscionably received may be conscionably retained might easily be multiplied, e. g.: Taylor v. Commissioners, 3 P. & W. 112; McCrickart v. Pittsburgh, 88 Pa. 133; Espy v. Allison, 9 Watts, 462; Diechman v. Bank, 1 Rawle, 54; Boas v. Updegrove, 5 Pa. 516; Deysher v. Triebel, 64 Pa. 383; Savings Institution v. Linder, 74 Pa. 371.

"Besides all this, this action being an equitable one, the superior equity always prevails. Manifestly the equity of the defendant, growing out of his duty and liability to his ward, is superior to that of the plaintiff. The ward is not a party to the suit, will not be bound by the judgment (Morris v. Garrison, 27 Pa. 226); and if the plaintiff recovers in the suit, the defendant will be compelled to pay twice—once to the plaintiff and once to the ward—that which he received in good faith, on behalf of his ward, and under a legal obligation to receive it. Truly this would be a sorry reward for his vigilance and good faith.

"There is nothing in the contention that this fund in the hands of H. B. Myers, administrator, was clothed with a trust for the estate of Sarah Mathias, and that, as such, her administrator may follow it into the hands of this defendant. The right to follow trust property ceases when it comes into the hands of a party without notice, and upon sufficient consideration: Bank v. Tyler, 3 W. & S. 376; Sadler's Ap., 87 Pa. 154. Here the legal duty to receive supplies the consideration, and it is not pretended that the defendant had any notice of any trust or claim on behalf of Sarah Mathias's estate.

"The plaintiff's remedy is against the estate of H. B. Myers; if that remedy was lost by the discharge of his administrator, it is the fault of those interested in the estate of Sarah Mathias who delayed ten years in procuring administration on her estate."

Plaintiff filed specific exceptions to the opinion and to the manner and form of the reservation of the point reserved.

*Errors assigned, inter alia,* were (1, 3, 5) answers to points, quoting points and answers; (4) in not answering 4th point as presented and in reserving its answer thereto, quoting point and answer; (7) the charge as in brackets above, in reserving the question of law in the manner and form in which it appears of record, quoting it; (8) in reserving a point in the case, quoting it; (9) in refusing to enter judgment for plaintiff; and (10) in entering judgment for defendant.

*N. M. Wanner, W. A. Miller* with him, for appellee.—The record shows exceptions filed by plaintiff at three different times: (1) At the close of the charge, which included a full statement of the point reserved, and also referred to it in answer to 4th point. (2) After the stenographer's notes of the trial had been filed. (3) At the handing down of the opinion entering judgment. That these exceptions were well taken and are available to set aside this judgment, if the point was improperly reserved, appears from the following cases: Fayette Boro. v. Huggins, 112 Pa. 1; Buckley v. Duff, 111 Pa. 223; Inquirer Co. v. Rice, 106 Pa. 623. [The argument as to manner and form of reserving point is omitted, as not involved in the decision.]

The speculative assignee acquired no right by the assignment; his administrator had no better right. Because, before there was a personal representative of the assured to claim it, he divided the money, will not place him beyond the reach of the law. Lapse of time in taking out letters of administration is no protection: Marsteller v. Marsteller, 93 Pa. 350. The privity which the law recognizes is that between ancestor and heir: Pennock v. Freeman, 1 Watts, 401. It is not privity of knowledge of the speculative transactions, as held by the court. How can one hold the property of another, simply because he did not know whose it was, when he got it from a third party,

especially if he got it without consideration as in this case? If the guardian, without such knowledge, and without notice of plaintiff's claim, had paid it over to the ward, or expended it for his use before suit brought, he would be protected.

If the administrator himself were suing, the fact that it was a voluntary payment by the administrator to the guardian would preclude recovery, and the cases cited by the court below would apply. In Montgomery's Ap., 92 Pa. 202, the court expressly avoids carrying the principle so far as to affect the rights of creditors. Morris v. Garrison, 27 Pa. 226, simply ruled that a judgment in the common pleas against the guardian was personal and did not *per se* bind the ward's estate, because he must settle with the ward in another forum, viz., the orphans' court. It did not decide that a guardian honestly resisting could be held personally liable if judgment went against him. Raser v. Raser, 62 Pa. 439, holds that the orphans' court has the power of a court of chancery and will decree against or in favor of a guardian, as may be just and necessary. And the same guarantee of fair dealing in the orphans' court is laid down in Ruth v. Ketterman, 112 Pa. 251.

The action for money had and received is an equitable remedy, whereby moneys may be followed into the hands of any one who, *ex æquo et bono*, should not retain them: Stair v. York Nat. Bank, 55 Pa. 364; Farmers & Mech. Nat. Bank v. King, 57 Pa. 202; First Nat. Bank of Wellsborough v. Bache, 71 Pa. 213; Hindmarch v. Hoffman, 127 Pa. 284; Brooks v. Church, 135 Pa. 137–140; Gaffney's Est., 30 W. N. 130; Aycinena v. Peries, 6 W. & S. 243. A holder for value without notice is the only party whom the law protects against a recovery: Bank v. Tyler, 3 W. & S. 376: Sadler's Ap., 87 Pa. 154.

In answer to the court's observation as to a trust for the estate of Sarah Mathias and as to the balancing of supposed equities, we refer to the long line of speculative insurance cases in which recoveries were sustained under similar circumstances. Neither in those cases nor in the one at bar, does the right to recover rest on those grounds alone. It is on the broad principle of public policy that the court of last resort has permitted these recoveries against well-settled rules and principles, which, as between private parties and private rights alone, would work an estoppel against the plaintiff.

*Henry C. Niles*, with him *W. F. Bay Stewart*, *George E. Neff* and *George B. Cole*, for appellee.—Appellant claims that the judgment shall be reversed for formal mistake of the court, entirely of its own motion; and asks for judgment on the verdict for plaintiff, thus depriving defendant of a review of his defence. The court by entering judgment in our favor would then put us in a worse position.

If Mrs. Mathias saw proper to treat the beneficiary named as if she had an insurable interest, her administrator had no standing to deny it: Grant's Admrs. v. Kline, 115 Pa. 624. As it must have influenced the company: Van Rensselaer v. Kearney, 11 How. 326. Her personal representatives cannot sue on her wrongful misrepresentations: Wolf's Ap., 22 W. N. 93.

The assignment to Sallie Myers was in evidence by the admission of the policy: 1 Wh. Ev., § 619: Smeich v. Herbst, 135 Pa. 539. The last legal beneficiary is entitled to recover: Gilbert v. Moose, 104 Pa. 74. The presumption is that every assignee has an insurable interest and he who alleges the contrary must prove it: Lenig v. Eisenhart, 127 Pa. 59.

The opinion of the court below leaves little to be added by counsel. Defendant, as the passive agent of the orphans' court, received the fund for his minor. To authorize a recovery there must be some privity: 2 Add. Cont., p. 594, 5th ed.; Finney v. Finney, 16 Pa. 380; Irwin v. Irwin, 1 S. & R. 548; Stacy v. Thrasher, 6 How. 60. Privity of contract is personal privity and is confined to the persons of the contracting parties: Beach v. Morris, 12 S. & R. 16.

If the claim is against the minor's estate it cannot be sustained in this action as his estate is in the custody of the orphans' court; if against the guardian, it ought not to be permitted. He did nothing for himself. The remedy was against the administrator before he paid it to the guardian.

The only disputed question of fact was whether the beneficiary named in the policy was a daughter or step-daughter. This was submitted to the jury, subject to the reserved point. The facts of the point reserved were therefore undisputed, and hence correctly reserved: Wilde v. Trainor, 59 Pa. 439.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

The appellant objects to the form in which the question of

law was reserved by the court below. As no exception appears to have been taken to the reservation, we need not discuss this question. It is the duty of counsel, if they have any objection to the manner of the reservation, to except thereto in the court below. This is only fair to the judge. If his attention is called to the defect at the time the reservation is made, he has an opportunity to correct it, if not in proper form. This matter is of little importance, however, in view of the fact that, upon the face of the plaintiff's statement, he has no case. The suit was brought in the court below against Zachariah Metzgar, guardian of H. E. Myers, to recover certain money which had been paid to him as such guardian being the one fourth part of the net proceeds of a certificate of insurance upon the life of the plaintiff's intestate, which the plaintiff alleges had been procured and assigned for speculative purposes. If we concede that the insurance was speculative, or, in other words, a gambling policy or certificate, it does not help the plaintiff. The administrator, having received the money from the Mutual Aid Society, divided it in good faith equally among the guardians of the four minor children of H. B. Myers, deceased. The defendant, as guardian of Hallick E. Myers, received of this money the sum of $723 on the 26th of July, 1878. Whatever may have been the plaintiff's right to recover against the administrator, while the money remained in his hands, he has no right of action against the guardian who received it in good faith, and, for all that appears, without knowledge that it was a part of the proceeds of a speculative policy. The right to recover back moneys on the part of the legal representatives of the assured from a person who has received the proceeds of a speculative policy, must end somewhere. We draw the line at the first devolution. After an executor or an administrator has received money under such circumstances, and in good faith distributed it, the right of action ceases.

Judgment affirmed.